IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| DESMOND THOMAS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:14-CV-63 (WLS) |
| | : | |
| DELTONIO SCOTT, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## ORDER

On June 15, 2016, the Court held a hearing to determine how much, if any, damages should be awarded to Plaintiff Desmond Thomas in conjunction with the default judgment entered against Defendant Deltonio Scott. The Court herein makes findings and holdings as to the truth of the allegations against Scott and the amount of damages Scott should be ordered to pay.

## PROCEDURAL HISTORY

On April 22, 2015, the Court granted Plaintiff Desmond Thomas' Motion for Default Judgment as to Defendant Deltonio Scott. (Doc. 53.) The Court deferred the hearing as to the truth of Thomas' allegations against Scott and the amount of damages, if any, until after Thomas' claims against Defendants King and Davis were resolved at trial. However, on March 9, 2016, the Court referred Thomas' claims as to all four Defendants, including Defendant Scott, to United States Magistrate Judge Thomas Q. Langstaff for mediation. Judge Langstaff issued an order setting the mediation for May 10, 2016 and conducted the mediation, which resulted in a stipulation of dismissal of Thomas' claims against Defendants King, Davis, and Knight. (Docs. 123, 125.) Defendant Scott did not appear for the mediation.

Scott has not appeared for any hearings related to the above-styled case at which he has been ordered to appear. Scott has not answered Thomas' complaint nor did he respond to Thomas' discovery requests. (*See* Docket.) On June 15, 2016, the Court conducted a hear-

1

ing under Fed. R. Civ. P. 55(b)(2) in order to establish the truth of Thomas' allegations and determine the amount of damages, if any, Scott should be ordered to pay. Thomas appeared for the hearing and Scott did not. During the hearing, Thomas testified under oath and presented no additional evidence.

## DISCUSSION

Upon defaulting, the defaulting party admits the movant's well-pleaded factual allegations. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citing *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Those factual allegations must provide a sufficient basis for imposing liability on the defaulting party. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). Federal Rule of Civil Procedure 55(b)(2) allows courts to conduct hearings to establish the truth of the allegations and determine the amount of damages, if any, that should be awarded upon entry of default judgment.

I.  **Factual Findings**

The Court makes the following factual findings based on Thomas' pleadings and uncontroverted testimony during the June 15, 2016 hearing. On Saturday, February 8, 2014, Thomas was in custody at Autry State Prison. All four defendants in this case – Deltonio Scott, Darius Knight, Kevin Davis, and Eddie King –were corrections officers at Autry State Prison and on duty at the time of the alleged incidents. Thomas was placed in a form of protective custody with another inmate. Thomas, however, desired to have a cell to himself because he was suffering from depression and other mental health issues. Around 10:30 AM, Thomas flooded his cell with water so that he would be placed in a single-person cell. The water rose to approximately twelve inches inside Thomas' cell. Around 11:00 AM, Scott, King, and Knight came to Thomas' cell and viewed the flooding. Scott told Thomas, "[We're] going to beat your ass today."

At approximately 4:30 PM, Davis came to Thomas' cell and told him to "cuff up," which meant that Thomas should position himself so that an officer could place handcuffs on him. Thomas complied and was walked to a mop closet where Scott and King held him with his back against a wall. Thomas remained handcuffed. Davis poked Thomas in the face

and said, "I told you about doing dumb shit." Davis slapped Thomas in the face about ten times, repeating, "You're going to understand me." When Thomas raised his knee in order to protect himself, Scott punched Thomas in the stomach and told him to put his knee down. Thomas was in the mop closet with the officers for approximately eight minutes. The officers grabbed Thomas and took him to a suicide watch cell.

The officers left but later returned to Thomas' cell. When they returned, Thomas spewed a string of profanities at them. Davis told Thomas to "cuff up" again, but Thomas refused to comply. When Knight unlocked the cell door, Thomas rushed out of his cell with his fists balled at his sides. Knight punched Thomas in the lip, knocking him to the ground. Davis jumped on Thomas' back, holding him to the ground and slapping him in the back of the head. Davis told Thomas to stop resisting and to put his arms behind his back. Thomas put his arms behind his back, but then Knight kicked him in the back of the head, prompting Thomas to reach for his head with one hand. Thomas again placed both hands behind his back and was handcuffed by Davis. The officers instructed Thomas to stand up, but he told them he could not because he was unable to do so while handcuffed. Scott and King then dragged Thomas by his handcuffs back into the suicide watch cell.

Davis later sent orderlies to check on Thomas and to deliver him several cups of soup. Thomas did not receive medical treatment until Tuesday, February 11, 2014, though he asked for medical treatment on Saturday, February 8, 2014, the day of the incidents for which he seeks damages. Thomas did not report the incident to internal affairs but believes another inmate did. Thomas was interviewed by Internal Affairs on Monday, February 10, 2014. Thomas was transferred to Calhoun State Prison on Wednesday, February 12, 2014. Thomas filed a grievance about the incident at Autry State Prison and a grievance at Calhoun State Prison but neither resulted in any action. He then filed the above-styled lawsuit.

Thomas stated that he suffered physical injury to his lip, stomach, and hand. He stated that the pain in his stomach, caused by Scott's punching him, lasted for about two days. He stated that the pain from his split lip, caused by Knight's punching his lip, lasted for about two weeks. He also stated he has a scar on his hand from injuries sustained during the incident. He stated that though he suffered depression prior to the incident, his mental con-

3

dition worsened and that he has ongoing anxiety and feelings of powerlessness and vulnerability whenever he is placed in handcuffs. Thomas testified that after the incident he began having nightmares and was placed on sleeping medication.

## II.   Determination of Damages

### A. Scott's Liability for Excessive Force

The Eighth Amendment protects prisoners from excessive force by state actors during their incarceration.[1] The constitutionality of prison guards' use of force rests on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–321(1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)). "To establish a claim for excessive force, the plaintiff must show that (1) the defendants acted with a malicious and sadistic purpose to inflict harm and (2) that more than a *de minimis* injury resulted." *McReynolds v. Ala. Dep't of Youth Serv.*, 204 F. App'x. 819, 822 (11th Cir. 2006) (citing *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002)).

In determining whether malicious or sadistic intent existed, courts consider a variety of factors, including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992). A wide range of deference is afforded to officers' choices to use force in maintaining security, but it is well established that officers "may not use gratuitous force against a prisoner who has been already subdued." *Skritch v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002).

The Court finds that Thomas has alleged and proven, through his uncontroverted pleadings and testimony, that Scott is liable for excessive force. The mop closet incident alone is sufficient to show such. Though Thomas had flooded his cell, perhaps justifying some form of disciplinary action, the guards, including Scott, were not justified in taking him to a mop closet, closing the door, and proceeding to punch and slap him while he remained

---

[1] The Court notes that the Eighth Amendment "cruel and unusual punishment" clause governs the States through the Due Process Clause of the Fourteenth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citing *Robinson v. California*, 370 U.S. 660 (1962)).

4

restrained by handcuffs and two guards. Thomas had complied with the order to "cuff up" and cooperated in exiting his cell. The force applied to Thomas was disproportionate to the need for force, which was minimal since Thomas was, at the time, compliant and restrained. The facts do not indicate that the safety of other inmates and staff members was threatened at the time Thomas was taken to the mop closet. Furthermore, the fact that Thomas was removed from the prisoner population and taken to an isolated location so that the guards could punch and slap him supports a finding that their force was malicious or sadistic and for the purpose of causing harm since they presumably did not want others to see.

The second incident, in which Thomas rushed out of his unlocked cell and was punched by Knight, held to the ground and slapped by Davis, kicked in the head by Knight, and dragged by his handcuffs back into his cell by Scott and King, is less clearly an excessive force violation since Thomas was noncompliant with the order to "cuff up" and rushed out of his cell when it was unlocked. During this incident, the need to use force to restrain a noncompliant inmate who had rushed out of his cell was justified. The Eleventh Circuit has held that even where an inmate is not physically resisting but rather refusing to follow orders, the use of force is necessary. *E.g.*, *Sanchez v. McCray*, 349 F. App'x 479 (11th Cir.2009); *Bennet v. Parker*, 898 F.2d 1530 (11th Cir. 1990); *Brown v. Smith*, 813 F.2d 1187 (11th Cir. 1987). "[P]rison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out. Certainly they are not required to do so where an inmate repeatedly fails to follow those orders." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008). Specifically, in *Brown*, the court held that the use of force was necessary to force an inmate into his cell for the purposes of a head count. *Brown*, 813 F.2d at 1188.

The Court finds that Knight's punching Thomas and Davis' restraining Thomas on the ground during the second incident were reasonable uses of force in light of Thomas' noncompliance. The Court need not determine whether Davis' slapping Thomas' head, Knight's kicking Thomas' head, or Scott and King's dragging Thomas back into his cell were excessive uses of force because Thomas did not assert that he seeks damages from Scott for physical injuries directly resulting from those specific actions.

5

For those reasons, the Court finds that Scott is liable for excessive force in violation of the Eighth Amendment with regard to the first "mop closet" incident. The Court finds that Scott is not liable for excessive force with regard to the second incident.

### B. Scott's Liability for Deliberate Indifference to a Serious Medical Need

The Court found in its November 7, 2014 Order that Thomas had stated an Eighth Amendment claim for deliberate indifference to a serious medical need sufficient to withstand preliminary review under 28 U.S.C. § 1915A(a). (Doc. 13 at 2.) "A medical need is serious if it has been diagnosed by a doctor as mandating treatment or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." (Doc. 5 at 8-9 (citing *Hill*, 40 F.3d at 1187).) To prove a claim for deliberate indifference to a serious medical need, a prisoner is required to set forth evidence that a prison official had subjective knowledge of the risk of serious harm and disregarded that risk. *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000); *Bozeman v. Orum*, 442 F.3d 1265, 1272 (11th Cir. 2005). "The seriousness of an inmate's medical needs may be decided by reference to the effect of the delay in treatment. Where the delay results in an inmate's suffering a life-long handicap or permanent loss, the medical need is considered serious." *Boatwright v. Spencer*, No. 5:05-CV-270, 2006 WL 3160359 at *2 (M.D. Ga. Nov. 1, 2006) (citing *Hill v. Dekalb R.Y.D.C.*, 40 F.3d 1176, 1187-88 (11th Cir. 1994) *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002)).

In its earlier finding that Thomas had stated a claim for deliberate indifference to a serious medical need sufficient to withstand preliminary review, the Court specifically noted that Thomas alleged that his injuries included depression, severe headaches, lower back pain, and dizziness. (Doc. 13 at 2.) The Court also noted that Thomas had alleged facts to support a finding that the Defendants, including Scott, were aware of his medical needs, indifferent to them, and that this indifference resulted in serious physical harm because Thomas intentionally cut himself due to his untreated depression. However, during his testimony at the June 15, 2016 hearing, Thomas did not mention the lower back pain or dizziness. Also, during his testimony at the hearing, Thomas did not list his subsequent self-mutilation as an injury directly resulting from the delay in providing him medical treatment. Furthermore,

6

Thomas testified that he suffered depression prior to the incident, and the Court cannot conclude based on the facts in the record whether Thomas' subsequent self-mutilation was directly attributable to the failure to provide him medical care until the Tuesday following the incident or was the result of a number of factors and conditions. Thomas testified that he was administered Motrin for his pain but received no other treatment, indicating that his injuries were not seriously exacerbated by the delay in treatment. The Court finds no other facts indicating that Thomas suffered serious physical harm due to the several-day delay in providing him medical treatment. For those reasons, the Court finds that the facts do not show that Scott is liable for deliberate indifference to a serious medical need.

### C. Damages

During the default judgment hearing, Thomas asked for $4,000 in damages from Deltonio Scott for the violation of his constitutional rights to receive medical treatment and be free from excessive force, physical injuries, and pain and suffering. He also asked for $5,000 in punitive damages, arguing that Scott is liable for punitive damages because of his statement, "We're going to beat your ass today" several hours before Thomas was in fact beaten by the four prison guards.

*1. Compensatory Damages*

"[C]ompensatory damages may be awarded based on physical pain and suffering caused by a defendant's use of excessive force, apart from any damages based on monetary loss." *Slicker v. Jackson*, 215 F.3d 1225, 1231 (11th Cir. 2000). In other words, a plaintiff need not prove monetary loss in order to receive compensatory damages for physical pain and suffereing. *Id.* However, in order to receive compensatory damages for mental and emotional suffering, a prisoner must demonstrate that he suffered a more than *de minimis* physical injury. 42 U.S.C. § 1997e(e).

The Court finds that Thomas has established that he suffered physical injury as a result of Deltonio Scott's direct actions and complicity in the actions of others, namely pain in his stomach, a scar on his hand, a split lip, and headaches. The Court further finds these physical injuries are more than *de minimis*, particularly the split lip, which caused Thomas pain for approximately two weeks, the enduring scar on Thomas' hand, and the ongoing head-

7

aches. Having so found, the Court also finds that Thomas may receive compensatory damages for mental and emotional suffering. For those reasons, the Court finds that Thomas should be awarded $2,000 in compensatory damages for the physical injury and mental and emotional suffering caused by Scott's violation of his Eighth Amendment right to be free from excessive force.

   2. *Punitive Damages*

Punitive damages may be awarded in 42 U.S.C. § 1983 cases such as this one for "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law." *Smith v. Wade*, 461 U.S. 30, 51, 56 (1983). 18 U.S.C. § 3626(a)(1)(A) provides that federal courts shall not grant or approve punitive damages "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *See also Johnson*, 280 F.3d at 1325. "A punitive damages award must be no larger than reasonably necessary to deter the kind of violations . . . that occurred." *Id.* at 1325.

Thomas asks for $5,000 in punitive damages, arguing that Scott is liable for punitive damages because of his statement, "We're going to beat your ass today" several hours before Thomas was in fact beaten by the four prison guards. The Court finds that the facts as established show that Scott acted with, at best, reckless indifference. Such a finding is supported by Scott's statement to Thomas several hours before he was taken to the mop closet and beaten, "We're going to beat your ass today," showing a premeditated intent to harm Thomas. Furthermore, the Court finds the fact that Thomas was taken by Scott and the other Defendants to a mop closet where he was beaten out of sight from the other inmates and guards supports a finding that punitive damages are appropriate. For those reasons, the Court finds that Thomas should be awarded $2,500 in punitive damages against Scott and that such a money judgment is a reasonable and appropriate deterrent.

### III.   Enforcement of the Judgment

The Court notes that due to Scott's complete failure to respond to any pleadings or Court orders in this case, it is likely that Scott will not voluntarily pay the judgment entered in this case. Generally, when a party fails to pay a money judgment ordered by the Court, the

8

opposing party moves the Court for a writ of execution. Fed. R. Civ. P. 69(a)(1); *see also Combs v. Ryan's Coal Co.*, 785 F.2d 970, 982 (11th Cir. 1986). Federal Rule of Civil Procedure 69(a)(1) allows the Court to issue a writ of execution to enforce a judgment. In Georgia, a writ of execution allows the prevailing party to place a lien on the property of the party who has been ordered to pay. 28 U.S.C. § 1962; *Maria v. Khiani Alpharetta, LLC*, No. 1:13–CV–01415, 2015 WL 1569185 at *2 (N.D. Ga. Apr. 7, 2015). Under Georgia law, to establish a lien on a party's property, the prevailing party may record the writ of execution on the general execution docket in a Georgia court in the appropriate county. *Maria*, 2015 WL 1569185 at *2*; see also* O.C.G.A. § 9–12–81(b) ("When the execution has been entered upon the docket, the lien shall date from such entry.").

## CONCLUSION

It is hereby **ORDERED AND ADJUDGED** that judgment be entered in Plaintiff Desmond Thomas' favor and against Defendant Deltonio Scott in the amount of $4,500. The Court hereby **ORDERS** Deltonio Scott to pay Plaintiff Desmond Thomas $2,000 in compensatory damages and $2,500 in punitive damages for a total of $4,500. Scott shall pay Thomas by sending a money order to the following address:

> GDC Trust Deposit
> Desmond Thomas, GDOC 1000356868
> P.O. Box 246570
> Pembroke Pines, FL 33024

**SO ORDERED**, this 22nd day of June, 2016.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**